May it please the Court, I'm Ken Carroll from Carrington-Coleman in Dallas. I'm here for Youtoo Media,L.P. and for the individual defendant, Mr. Chris Wyatt. Subject to the Court's questions, of course, I'd like to focus on those aspects of the judgment that imposes individual liability on Mr. Wyatt for breach of contract, the LOI, the letter of intent, for not reimbursing the $3 million down payment to the plaintiff, Prince Mansour, and then, secondarily, awarding an additional $500,000 in attorney's fees against Mr. Wyatt based on that alleged breach of contract. Under Section 38001 of the Texas Practice and Remedies Code. I would entrust the other issues to the briefs unless the Court has questions. There are two ways, two theories that one might try to argue that Mr. Wyatt should be held liable for breach of contract and specifically for the non-reimbursement of the down payment individually on these facts. One, that he is directly, primarily liable for his own breach of the contract, the LOI, for non-payment. Or two, that he's liable secondarily or derivatively. That is, on the theory that he is the general partner of Youtoo Media, Youtoo Media didn't reimburse or refund that general, that down payment. And he, as general partner, is secondarily or derivatively liable for that default. Neither the verdict nor the judgment tells us which theory was the basis upon which the ultimate judgment was issued against Mr. Wyatt individually, either by the jury or by the court. But regardless, both of the theories are infected by reversible error. There is no evidence to support direct or primary liability against Mr. Wyatt. And with respect to secondary or derivative liability, although he signed the LOI as general partner, he wasn't, never was. And everybody, including the plaintiff, knew that. Everybody, that is, except the jury. And that's because the trial court erroneously prohibited the defendants from introducing evidence that would have proved that the actual general partner of Youtoo Media LP was Youtoo Management LLC and not Chris Wyatt. Before you get too deep into the substance of it, the other side says you've waived this by not, since it's a sufficiency challenge and you didn't raise it in a 50B motion below. How do you, or I think our case is somewhat inconsistent, how do you reconcile it and read the Supreme Court's opinion in uniform on this issue of whether you can make this argument? Yes, Your Honor. I would say that there are at least three ways in which the court has the authority to review the issues that we've raised. Going first to the unitherm argument. Of course, unitherm, what unitherm says is that the court is precluded from conducting a sufficiency of the evidence review. And that's all it says. That is, whether there is substantial evidence of a quality or quantity such that a reasonable jury could find what this jury found. Unitherm does not prohibit plain error, no evidence review, which is with respect to the direct or primary liability issue, that's what we're arguing. I don't blame you. Wouldn't there be some evidence because the contract says he's the general partner? That, I think, Your Honor, goes to the second issue of secondary liability, and that, we contend, is not governed by the unitherm issue. Let me finish up with the unitherm point on just this point. There are a number of cases, many, many cases in this circuit where the court has said after unitherm that the plain error standard is applied, and it has been done. And, of course, in that circumstance, the court can't render judgment, but it can remand for a new trial. I want to draw to the Court's attention, as often happens as you prepare for this opportunity to stand up here, you find some things you didn't find before. One of the arguments I know that we cited in our brief, I think it's footnote 1 in our reply brief, a little bit of a history of the circuit's treatment of this issue, and particularly the McClendon case, which says, you know, this looks a little strange here, but we recognize, gosh, I mean, again, I found probably a dozen, maybe 15 cases where the court's done it, but a lot of them have said, but nobody ever finds that there actually is plain error. Well, I can tell you there's at least one where the Fifth Circuit has done that. In King v. University Health, 645F3rd, 713, pages 722 to 723, a pretty convoluted case where both sides were unhappy with the verdict. Both sides appealed. Neither side apparently filed a 50B. The Fifth Circuit undertook a detailed plain error review of both sides' complaints, rejected Dr. King's, but with respect to University Health, did in fact find that the contractual issues there actually disproved the jury's verdict on breach of contract with respect to wages, found that was no evidence, found that was plain error, reversed and remanded. Now, specifically with respect to your question, Judge Costa, about the idea that he signed as general partner, isn't that some evidence? If the issue of secondary liability were being judged under plain error, yes, that's true. But we argue that there are two other bases, two other ways in which error was preserved here. First, the defendants did object to the jury charge in this case. They objected to the submission of Mr. Wyatt at all. And then they also said, but if you're going to submit him, you at least got to say that it's as general partner, because that's the way the case has been tried. But I didn't see, are you directly appealing the jury charge issue? Are you directly appealing the denial of that jury instruction? Well, we're directly appealing our objection that he should not have been submitted, yes. We did say that in there. And I believe under 51d, that gives us, that preserved that objection was sufficient to preserve error and allow the court to review for abusive discretion if the objection was sufficient. If the objection wasn't sufficient, it's under 51d-2, there's still plain error review, as long as there is, it affects substantial rights, and I would submit that a $3 million judgment against an individual affects substantial rights. So there is the opportunity to review under that as well. Then there is the other issue with respect to the issue of Mr. Wyatt's situation as having signed as general partner, and that is that in addition to this jury issue, and of course one of the problems with the jury charge, again, as I said, it doesn't tell us whether they were going on individual liability or secondary liability, direct liability or secondary liability, is that we also, there's an evidentiary problem, procedural evidentiary problem, because there was an attempt to introduce evidence showing who the true general partner was, and I can talk about the substantial or the substance of that problem, but there's no question that error on that was preserved. Not only was the evidence proffered, it was, there was an offer of proof, and the evidence showing that U2 Management LLC is the true general partner of U2 Media LP is in the appellate record as part of that offer of proof. Let's say you've been allowed to get those external partnership documents into the record. Then, I mean, would it be a sufficiency of the evidence because the contract says one thing and the documents say another, or you'd be arguing just as a matter of law there's no liability because of those, what those partnership agreements. Well, there was a summary judgment motion on that that was denied, but we try to make that argument, but if the court had denied that and it allowed the case to go to the jury, then, yes, we'd be talking about sufficiency of the evidence. Unfortunately, in this case, the jury wasn't allowed to see those other things, and that's why we think we're entitled to a new trial on that issue. And I will say again, Unitherm is limited to bars on sufficiency of the evidence, although this Court hasn't said it, the Fourth, Seventh, Eighth, and Ninth Circuits have all said, you know, it doesn't affect things like challenges to jury charges or, more importantly, evidentiary issues, and those are, I think, detailed in footnote three of our reply. You're not arguing there's a mutual mistake, though, are you? I would like to. I never saw that. I mean, you suggest this was changed at the late hours in the palace, but I never saw you say there was a mutual mistake. We inherited this case after pleading deadline was closed, and that was not pleaded. As a matter of fact, I think there probably was a unilateral mistake, but that's not something I think I can argue here as much as I would like to. But I think that's why this doesn't quite fit into a sufficiency. It's just – I mean, I see the issue you're raising. I think it's a difficult one, but it's not clear, like, what box it really fits in. Well, let me see if I can get there. Again, going to direct liability, the idea here is that the plaintiff argues that, well, you know, Chris Wyatt signed this document, and so he's liable. They go on this journey talking about the fact that he signed as general partner, well, that you can't try to hide behind some undisclosed principle and say that I didn't really mean it myself, and that's an interesting theory, but that's also not something we argued. We're not trying to argue undisclosed principle or the law of agents and principles there. They simply say that because he signed it, because the money wasn't paid back, he's liable. That ain't the way breach of contract works in Texas. Under breach of contract law in Texas, a plaintiff is required to identify and prove a specific undertaking or obligation in a contract and then to prove nonperformance of that specific obligation, duty, or undertaking. That's the Town West and the other cases that we cited in our brief. Here, that obligation to repay is simply not placed on Mr. Wyatt. The provision says you to media hereby acknowledges and agrees that you to media shall reimburse the down payment to His Royal Highness Prince Mansour. It doesn't say Chris Wyatt will do it also. It doesn't say the general partner, as defined in the contract, will do it. They certainly could have done that. They could have added Chris Wyatt to it. They could have added the general partner. They could have had Mr. Wyatt sign a guarantee, an idea that the appellee suggested, sign a guarantee either in the contract or separately. They didn't do any of those things. Significantly, the general partner, defined as Chris Wyatt in this document, is listed elsewhere in the document. And there are obligations and prohibitions on the general partner, indicating that when the parties wanted to, they included the general partner. So when they left him out, that's also intentional. There was no contractual obligation for Chris Wyatt either to refund this money, to reimburse this money, or to see that somebody else does it. And again, where the contract itself negates the actual breach of contract, that constitutes no evidence, plain error, and reversal. Again, we cited in our brief the Coyle v. Jones case out of the Dallas Court of Appeals late last year that held, again, that when the contract itself negates the breach claim, that's no evidence. And to reiterate what I'd said earlier, the King v. University Health case in the Fifth Circuit says the same thing, 645F3rd at 723. That, with respect to direct liability, is what we contend should happen here. Now, with respect to the separate issue, the derivative, secondary liability, the argument that he should be liable because he's the general partner, that's really the theory that the case was tried on, truthfully. We've said that. We've shown the quotations from the papers in our brief, and you can look at that. But perhaps most importantly, the lawyer for Prince Monsoor, in closing, just flat-out said, the only time he talked about Chris Wyatt's individual liability was, let me read you the jury instructions. The first one says, did U2 Media LP or Chris Wyatt breach the letter of intent by failing to repay Prince Monsoor bin Abdullah Al Saud the down payment? Christopher Wyatt, was he the general partner? Yes. So the answer to that would be yes on both of those answers. Now, if we were looking at that issue from a plain errors standpoint, sure, signing the contract would be some evidence. But we're not because we have an evidentiary problem. I mean, substantively, we know he's not the general partner. If you ask Mr. Cole later on, he'll probably tell you he wasn't the general partner. But in front of that jury and in front of the ñ and everybody knew that because it's in the drafts and it's in a number of other things. But procedurally here, and this is where we have the other error that requires reversal in a new trial, our folks tried to show that he wasn't the general partner. They had documentary evidence that conclusively proved he wasn't the general partner, that U2 Management LLC was, in fact, the general partner of U2 Management. The court excluded that based on the parole evidence rule. But, of course, the parole evidence rule prevents you from introducing extrinsic evidence to vary the terms of an unambiguous contract. That's not why the evidence was presented. Because as we've discussed above, or I've discussed above, there was no contractual obligation on Chris Wyatt or the general partner to pay this $3 million back. The only way that he ends up secondarily liable is by operation of law, the principle that everybody else agrees with, partnership law, that a general partner is liable for the obligations of its partnership. But the parole evidence rule doesn't affect that. The defendant was entitled to prove to the jury who the true general partner, and to the court, who the true general partner was of U2 Media in order for that principle of law to be correctly applied. And they provided the evidence, they made an offer of proof, which would have showed that the court erroneously excluded it. And then he compounded the error by submitting a charge that didn't tell us whether or not the jury was deciding based on individual direct liability or secondary derivative liability. And the court is entitled, because of that offer of proof and because of the proffer, to review that as it would any other evidentiary challenge. And, again, Unitherm simply doesn't prevent that. Speaking very briefly to the issue of fees. I take it the practicality of all this is that the judgment against the partnership is probably not worth anything because the partnership doesn't have any money. You're not even appealing that. So is that why this is all focused on the liability of Wyatt? Well, you know, the practicality is, yes, I mean, obviously there's this question about how much either one of them has. Right, I was going to say I don't know whether he has that either. But the fact is, yes. And the other, I mean, we had an explanation for why it is that we believe that the partnership didn't default on the repayment obligation as well. The jury disagreed, and, frankly, we couldn't find any good reason for arguing about that. If we could, we would have. The fee issue is pretty easy. There's just, you can only get fees under 38.001 if you prove breach of contract. They didn't prove direct breach, direct liability, as I've explained. And because U2 Media can't be responsible for fees because it's not a corporation or individual under Texas law as it currently exists, he can't be secondarily liable for something that his partnership can't be directly liable for. Thank you. Thank you, sir. Carl. Good morning. May it please the Court. My youngest son went through a period of time where he carried around a fire truck with him everywhere. For the last week, I've been carrying around the signature page on the contract, which has animated the argument this morning and is sort of the beginning and the end of the record in this case. He signed it. And, Judge Costa, as you say, that is some evidence. That is his name and a title and a defined term that appears at the beginning of the agreement in the capacity that he signs with. And I think tellingly, the original definition of the first issue in the opening brief of Mr. Wyatt was that, and it's on page 33, that our position lacked or had no substantial evidence, in fact, or law to support it. So in a sort of candid description, before we got into this uniform discussion, that's how they described the issue. There were a couple of other words. The briefing on this is thorough. I don't want to just sit here and rehash what's already been laid out and what has been explored in questioning before. But a couple of points on the standard issue, and I'll talk about the merits on a couple of issues as well. But in reviewing the reply brief and this whole question of parole evidence and the unambiguous language on this signature page, I'm reminded in a lot of the cases that say a parole evidence rule is not really a rule of evidence. It's a rule of substantive contract law that goes to the definition of what forms the contract, what terms are in the contract. And I think that illuminates the question of whether this is something raised appropriately by Rule 50 motion or by an evidentiary objection. It's a substantive objection that goes to the quality and quantity of evidence that is necessary, and I think it's the kind of thing that Rule 50 is intended to engage. The other issue I would add to the discussion about the standard of review is if we go to the point of being plain error, it's just not a plain error. I mean, the cases that are cited in Judge Cummings' opinion are pretty bread-and-butter Texas cases about the parole evidence rule, and the principle they cite is unexceptional, and this document looks an awful lot like what's discussed in those cases. So I think all of that is a little bit of a tempest in a teapot in a way. It's an important question. We should know what standard we apply, but when you actually get to the question at hand, it's not really a very plain sort of issue of the kind where this Court has indicated there might be a plain error. On the substance, I've heard of all and read in their briefing about all these different theories that we had. I didn't know we had them. What we alleged and what was tried was a claim for breach of contract, a disagreement. That's the page I've been carrying around as the signature page on that contract. And in some sense, the fact that he signed it as general partner is a little bit of a red herring. The cases that we cite say if you sign something as an individual, there are legal consequences to that. The signature is unambiguous. It happens here that he signed as the general partner, which is a term with significant meaning in the law and a defined term in the first page of the agreement. But quite honestly, he could have signed this as, you know, Chris Wyatt as the unicorn, and unicorn been a defined term in the agreement. It had the exact same effect. There is a signature. It is on there. He stands for the obligations in the contract, and that's that. But this specific provision you're relying on just says U2 Media has to pay back the $3 million plus. Absolutely right. Now, that fact is also true in all these other cases where somebody signs. There's an entity. It's often confusing what the entity is. You look at the signature. There's an individual. The individual isn't named in the contract. Here he, in fact, is. But that individual, by his signature, undertakes to ensure the performance of the obligations in the contract. We have to point to an obligation. Regardless of their position in the company. Well, correct. If I sign it and I take affirmative responsibility, I could be the mail clerk. I could be the CEO. It doesn't really matter. It's informative. It's helpful. It gives some sense of what they have to do with the situation. But in terms of the black-letter principle, not particularly relevant. Here, of course, he said on the first page of the agreement, I am the general partner, and then it goes on to describe a bunch of things that the entity, in which he is the general partner, is going to do. Could it be written differently? Perhaps. And this is all sort of in the category of parallel evidence, but it's backstory. You talked about the tent and Saudi Arabia and all that. This is on the fly. People are on literally different sides of the world. Getting something in writing that says, I am an individual, a real, live human being, not some entity named you two, and I stand for this contract, that has value. And that makes sense, that it would be signed individually, that you would request it, and that he would do it that way. You could do it other ways. You could have a separate guarantee. You could have a this. You could just stand on your rights under the law of partnership, I suppose, and go after a general partner. But that doesn't really make sense in this context. It's simpler and it's cleaner to do it this way, to rely on the case law about the parallel evidence rule, and that's within their rights to do that. The fact that you could draft it other ways and perhaps get to the same result is of no moment. What these people drafted is unambiguous under the applicable cases. In fact, this whole business about, oh, we've got some evidence that maybe he wasn't really a general partner and this and that, that's the whole point. I mean, we could perhaps have just relied on the general law of partnership and the concept of a general partner, but why? We're on the other side of the world. We're dealing with law we're not familiar with. We've got people we don't just met in the tent that we don't know all that well. Getting it written down makes a lot of sense. So we don't have to go back through YouTube, media, management, LP, general partner, and wade through a bunch of Texas public filings. Which, by the way, almost every case that we cite about the parallel evidence rule involves some public filing by some entity, and uniformly the cases say that just doesn't matter. The contract trumps because the parties are entitled to lay it out, and whatever is in the public records is interesting, it's informative, but it's not, doesn't trump over what the language of the contract is. The question about fees, as it was briefed, we had a little bit of two ships there. Their theory is you can only recover fees from Mr. Wyatt individually if you could get them from the entity, but that's not the way this contract is drafted. We have a contract with two legal entities. One is with the partnership. One is with the individual. You can recover fees from one. You can't from the other. That's a little odd, maybe, but that's what our Texas legislature has given us in its wisdom under Chapter 38, is sort of a grab bag of entities from whom you can get attorney's fees in contract disputes and others who you can't. The law says someone who stands in the position of a guarantor is a co-maker of that obligation. It's directly analogous to this. You can get fees from some. You can't get fees from others. So I don't think that's particularly exceptional, and it's certainly not the kind of oddity that would require us to go beyond the plain language of what is in the contract. So those are the issues I wanted to speak to that I didn't feel had been fully briefed or raised new by the discussion. If the Court doesn't have other questions, I'll give my time back to the Court and have a seat. Thank you. We're back to he signed it, so he's responsible. I confess that I think the appellee got led down the wrong path by some clumsy language in our opening brief, my clumsy language, when I talked about legal insufficiency of the evidence. But I did ultimately get around to saying what I meant, which was there was, in short, no evidence to support such a finding of primary individual liability for Wyatt on page 34. That's what I meant, which is contrary again to what Mr. Cole has said, yes, he signed it. Mr. Cole said by his signature he undertakes to ensure, undertakes the responsibility to ensure performance, or words to that effect. But that's not what the contract says. It lays out specific obligations, specific responsibilities for individual parties. First of all, I should say that it also defines parties, and Mr. Wyatt is not included in the definition of parties. But setting that aside, there are specific things that Prince Mansour is supposed to do, can do, has the right to do. There are specific things that U2 Media can do, has the right to do, is supposed to do. There are things that the general partner is supposed to do, can do, has the right to do, or is prohibited from doing. On the second or third page, there's a no shop provision that says the general partner can't engage in shopping equity interests here. They knew enough to include the general partner in specific obligations and provisions when they wanted to. They left him out when it came to the point of who has the right or the obligation to reimburse the down payment. By the way, who can reimburse the down payment except the person who gets it, and that's U2 Media. They didn't put him in there under the law inclusio unius exclusio alterius. It's pretty clear that that means they didn't mean for Mr. Wyatt or the general partner to be liable under that provision. When we get into the paroled evidence rule, Mr. Cole talks about the fact that we're talking about people on different sides of the world dealing with different odd issues of Texas law and so forth. Let me remind the Court, it's in the record that Prince Montsuva is represented by lawyers from Latham and Watkins. I think they probably can deal with Texas law no matter where they're sitting at that particular time. But the real issue with respect to the paroled evidence rule gets back to where we were before, which is that the trial court, and I'd submit the appellees, have conflated the issues of altering a contractual provision with dealing with the principle of law. If we had tried to introduce evidence in order to say he's not the general partner under this contract, in other words, that no shop provision, it doesn't apply to him. It's really U2 management. That would have been a problem. That would have been covered by the paroled evidence rule. But that's not what we did. We said there's a principle of law that says we're responsible for U2, that the general partner is responsible for U2 Media's debts, its non-performances, and that's just a principle of partnership law, and the paroled evidence rule has no place there. We are entitled to prove who the real general partner was. We gave you the evidence. The judge wouldn't let us give it to the jury, so the jury entered a verdict without the evidence, and the court isn't. They were entitled to see that. We're entitled to a reversal. Does your opening brief squarely frame this as an exclusion of evidence of the partnership documents? Yes. Can you point? Where's the clearest part of that? Well, I believe we start on page 39. Yeah. We start on page 39 and go. Yeah, I like the Dickens quote. Thank you. Go through page 46, and that's where we deal with that. Your Honor, I see my red lights on. We would ask that the court reverse and remand for a new trial. Thank you. Thank you very much. These cases will be taken into development, and the court will.